Matter of Erica II. v Jorge JJ. (2018 NY Slip Op 07002)





Matter of Erica II. v Jorge JJ.


2018 NY Slip Op 07002


Decided on October 18, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 18, 2018

524572

[*1]In the Matter of ERICA II., Respondent,
v
JORGE JJ., Appellant.

Calendar Date: September 11, 2018

Before: Garry, P.J., Clark, Mulvey, Rumsey and Pritzker, JJ.


Teresa C. Mulliken, Harpersfield, for appellant.
Geanine Towers, New York City, for respondent.
Allen E. Stone Jr., Vestal, attorney for the child.



MEMORANDUM AND ORDER
Clark, J.
Appeal from an order of the Family Court of Broome County (Young, J.), entered January 26, 2017, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 8, for an order of protection.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a daughter (born in 2010). In August 2016, the mother commenced this Family Ct Act article 8 proceeding, alleging that the father had committed the family offenses of harassment and stalking by engaging in a series of acts that included a call to the mother's landlord, repeated requests to the police for welfare checks at the mother's home and visits to the mother's employer, home and child care provider. Following a fact-finding hearing, Family Court granted the mother's family offense petition based upon its determination that the father had committed the family offense of "harassment" and issued an order of protection directing the father to stay away from, and refrain from contacting, the mother for one year. The father now appeals, and we affirm.
In a Family Ct Act article 8 proceeding, the petitioner bears the burden of establishing, by a fair preponderance of the evidence (see Family Ct Act § 832), that the respondent committed one of the family offenses enumerated in Family Ct Act § 821 (1) (a) (see Matter of Dawn DD. v James EE., 140 AD3d 1225, 1226 [2016], lv denied 28 NY3d 903 [2016]; Jennifer JJ. v Scott KK., 117 AD3d 1158, 1159 [2014]). The determination of whether the respondent has committed a family offense presents a factual issue to be resolved by Family Court, and we accord "great weight" to the credibility assessments made by Family Court in resolving that issue (Matter of Shana SS. v Jeremy TT., 111 AD3d 1090, 1091 [2013] [internal quotation marks and citations omitted], lv denied 22 NY3d 862 [2014]; see Christina KK. v Kathleen LL., 119 AD3d 1000, 1001 [2014]). Where, as here, Family Court did not identify the precise family offense it found to be established by the evidence, this Court may independently review the record to determine whether the evidence supports Family Court's finding that the respondent committed a [*2]family offense (see Matter of Robert Q. v Miranda Q., 138 AD3d 1174, 1175 [2016]; Matter of Elizabeth X. v Irving Y., 132 AD3d 1100, 1101 [2015]).
Upon our review of the record, we find that the evidence supports a finding that the father committed the family offense of harassment in the second degree. To constitute harassment in the second degree, the proof had to establish that, with intent to harass, annoy or alarm the mother, the father "engage[d] in a course of conduct or repeatedly commit[ted] acts which alarm[ed] or seriously annoy[ed]" the mother "and which serve[d] no legitimate purpose" (Penal Law § 240.26 [3]). Intent to harass, annoy or alarm, as required for harassment in the second degree, may be inferred from the father's conduct and/or the surrounding circumstances (see Matter of Maureen H. v Bryon I., 140 AD3d 1408, 1410-1411 [2016]; Matter of Dawn DD. v James EE., 140 AD3d at 1226; Matter of Lynn TT. v Joseph O., 129 AD3d 1129, 1130 [2015]).
Testimony from the mother and the father established that, over a span of three days, the father caused the police to conduct two welfare checks at the mother's home in a 24-hour period,[FN1] called the mother's landlord to inquire if the mother's residence or employer had changed and went to the mother's place of work, where he asked the mother's supervisor if the mother remained employed and — according to the mother — claimed that the mother had kidnapped their child. The mother testified that, after the father's visit, her employer warned her that continued visits from the father could impact her employment. The mother stated that she was "worried" that she would lose her job and that she ultimately did not return to work after this incident. The mother also stated that she was concerned that the father's call to her landlord, and the repeated police visits to her home placed her housing situation in jeopardy. The evidence additionally established that, in the weeks leading up to the mother's commencement of this proceeding, the father visited the mother's child care provider on two occasions and attempted to see the child, despite the fact that he was permitted only supervised visitation at that time. The evidence further revealed that, on the same day that the mother learned of the father's visit to her employer, the father approached the mother outside of her apartment. The mother testified that the father yelled at her during this encounter and that, shortly thereafter, she contacted the police about the father's behavior and commenced this proceeding.
The father readily admitted to engaging in each of the alleged acts, but argued that they did not constitute the family offense of harassment in the second degree because they served a "legitimate purpose" (Penal Law § 240.26 [3]) — addressing and alleviating his concern for the child's well-being. However, Family Court rejected the father's explanation for engaging in these acts. Family Court was familiar with the parties, as a neglect proceeding against the father — of which it took judicial notice — was pending before it. Contrary to the father's contention, Family Court did not abuse its discretion in taking judicial notice of this proceeding (see Matter of Shirley v Shirley, 101 AD3d 1391, 1394 [2012]; Matter of Anjoulic J., 18 AD3d 984, 986 [2005]). According due deference to Family Court's credibility determinations, including its rejection of the father's claim that his actions served a legitimate purpose (see Matter of Dawn DD. v James EE., 140 AD3d at 1227), the evidence amply supports a finding that the father committed the family offense of harassment in the second degree (see Penal Law § 240.26 [3]; Matter of Lynn TT. v Joseph O., 129 AD3d at 1131; Matter of Kritzia B. v Onasis P., 113 AD3d 529, 529 [2014]). Accordingly, we will not disturb Family Court's determination.
Garry, P.J., Mulvey, Rumsey and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The father testified that he also requested a third welfare check, although it is unclear from the record when such welfare check occurred.