Matter of Raelene KK. v Anthony LL.
2026 NY Slip Op 03721
June 11, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Raelene KK., Petitioner,
v
Anthony LL., Appellant. (Proceeding No. 1.) (And Two Other Related Proceedings.)
In the Matter of Anthony LL., Appellant,
v
Raelene KK., Respondent. (Proceeding No. 4.) (And Another Related Proceeding.)

Decided and Entered:June 11, 2026
CV-25-1035
Calendar Date: April 21, 2026
Before: Garry, P.J., Reynolds Fitzgerald, Ceresia, Powers And Mackey, JJ.

Christopher Hammond, Cooperstown, for appellant.
Betty J. Potenza, Milton, attorney for the child.

[*1]
Ceresia, J.
Appeal from an order of the Family Court of Broome County (John Hubbard, J.), entered May 22, 2025, which, among other things, granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 8, finding respondent to have committed a family offense, and issued an order of protection.
Raelene KK. (hereinafter the mother) and Anthony LL. (hereinafter the father) are the parents of one child (born in 2020). The parties were separated at the time of the child's birth, and the child remained solely in the mother's care apart from a short period where the mother and the child would spend overnight visits with the father. In July and August 2023, the mother filed two family offense petitions alleging that the father committed several offenses. The mother additionally filed a petition seeking sole custody of the child with supervised parenting time for the father. Family Court issued a temporary order granting the mother custody of the child and the father supervised parenting time on a biweekly schedule. In May 2024, the father filed his own petitions wherein he sought custody of the child and alleged that the mother committed several family offenses.
Following a two-day hearing, Family Court granted the mother's first family offense petition and denied the parties' remaining family offense petitions. Regarding the custody petitions, the court awarded the mother sole legal and primary physical custody of the child, with supervised parenting time for the father pursuant to a biweekly schedule. The father appeals.
We turn first to Family Court's rulings relative to the family offense petitions. "The petitioner in a family offense proceeding bears the burden of establishing, by a fair preponderance of the evidence, that the respondent committed one or more of the family offenses specified in Family Ct Act § 821 (1) (a)" (Matter of Alison EE. v Stephen FF., 245 AD3d 1053, 1054 [3d Dept 2026] [internal quotation marks and citations omitted]; see Matter of Amber EE. v Kalam EE., 241 AD3d 1623, 1628 [3d Dept 2025]). "The question of whether a family offense has been committed presents a factual issue to be resolved by Family Court, and Family Court's determinations regarding the credibility of witnesses are accorded great weight" (Matter of McKenzie v Berkovitch, 192 AD3d 1413, 1414-1415 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Pauline DD. v Dawn DD., 212 AD3d 1039, 1041 [3d Dept 2023], lv denied 39 NY3d 915 [2023]).
During the hearing, the mother testified that she and the father would both instigate arguments that eventually turned physical. On one occasion when she was 18 weeks pregnant with the subject child, the father pushed her down and stomped on her stomach, causing her to go to the hospital over her concern that she could have a miscarriage. The mother testified that she was fearful of the father due to his violent behavior, numerous threats of violence and threats to abscond with the [*2]child, which began even before the child was born. Text messages underscoring this behavior were admitted into evidence, demonstrating instances where the father issued warnings that he would "come stomp yo f***ing eyes out yo head" and "punch you . . . in ur mouth for keeping me from my daughter." In another message, the father stated, "[k]eep being a b***h and I'll leave with her when I get her," referring to the child. The mother admitted that she had said that she would kill the father on two occasions in response to the father threatening her life, but further stated that she did not mean what she said. The father, in turn, testified that he and the mother would threaten each other but not seriously, and that he had never harmed her. However, the father also stated that the mother warned that she would kill him at least 20 times and that he was afraid of her. The father claimed not to recall sending the menacing text messages.
We conclude that the mother met her burden of demonstrating that the father committed the family offense of harassment in the second degree in that, with the intent to harass, annoy or alarm the mother, he pushed and kicked her in the stomach while she was pregnant (see Penal Law § 240.26 [1]; Matter of Paul Y. v Patricia Z., 190 AD3d 1038, 1042 [3d Dept 2021]) and repeatedly threatened to harm her and take the child from her, a course of conduct that alarmed her and served no legitimate purpose (see Penal Law § 240.26 [3]; Matter of Samah DD. v Mark VV., 235 AD3d 1116, 1120 [3d Dept 2025], lv denied 44 NY3d 901 [2025]; Matter of Jasmin NN. v Jasmin C., 167 AD3d 1274, 1276 [3d Dept 2018]). We further agree with Family Court's determination that the father failed to satisfy his burden of establishing that the mother had engaged in behavior constituting harassment in the first or second degrees (see Penal Law §§ 240.25; 240.26).FN1 Although the father testified that the mother had threatened to kill him "at least 20 [times]," such testimony was devoid of any detail concerning the particular circumstances of such purported threats not to mention undermined by the father's own claim that any threats between the mother and himself were not serious. While we are mindful that the mother did admit to making two such threatening statements, Family Court credited her testimony that these were in response to the father's own menacing statements and were "mere angry words," not "true threat[s]," as required to constitute "an unequivocal statement of intended physical harm" (People v Lagano, 39 NY3d 108, 112 [2022] [internal quotation marks and citation omitted]; see Matter of James v Bailey, 246 AD3d 807, 808 [2d Dept 2026]). In view of the foregoing and deferring to Family Court's credibility determinations, we discern no error in its rulings on the family offense petitions.
Turning to the parties' custody petitions, "[w]hen making an initial custody determination, Family Court's paramount concern is the best interests of the child[*3]" (Matter of Brian Q. v Allysa R., 244 AD3d 1328, 1328 [3d Dept 2025] [internal quotation marks and citations omitted]). "In conducting a best interests analysis, courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Jahari BB. v Zada CC., 232 AD3d 1142, 1144 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Mary AA. v Lonnie BB., 204 AD3d 1355, 1356 [3d Dept 2022]). In addition, "the court must consider the effect of domestic violence when the allegations of domestic violence are proven by a preponderance of the evidence" (Matter of Robert C. v Katlyn D., 230 AD3d 1392, 1394 [3d Dept 2024] [internal quotation marks and citations omitted]). "Family Court may properly order supervised visitation if it finds that unsupervised visitation would be detrimental to the child's safety because the parent is either unable or unwilling to discharge his or her parental responsibility properly" (Matter of Christopher WW. v Avonna XX., 202 AD3d 1425, 1426 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; see Matter of Michael NN. v Robert OO., 210 AD3d 1326, 1327 [3d Dept 2022], lv denied 39 NY3d 910 [2023]). "Given Family Court's superior ability to observe the witnesses and evaluate credibility, we defer to Family Court's factual findings and credibility determinations and will not disturb its determination if supported by a sound and substantial basis in the record" (Matter of Britney A. v Jonathan A., 238 AD3d 1447, 1448-1449 [3d Dept 2025] [internal quotation marks and citations omitted]; see Matter of Thomas K. v Shauna L., 242 AD3d 1335, 1337 [3d Dept 2025]).
The hearing evidence established that the mother has always been the child's primary caregiver. Indeed, apart from a two-month period where the mother and child would spend some overnights at the father's home, the child remained in the mother's care for the entirety of her life. As testified to by the mother, the father had no contact with the child during the first year of her life and never contributed financially. In addition, the mother was the only parent to take the child to doctor's appointments, ensure that the child has health insurance and provide food and clothing for the child. In accordance with Family Court's temporary parenting time order, the mother diligently brought the child to a family resource center once a week for seven months to facilitate the father's supervised parenting time, despite not having her own vehicle, and notwithstanding that the father only appeared once.
The mother also testified to various instances of domestic violence between her and the father[*4]. On one occasion while they were in a car together with the child in the back seat, the mother informed the father that she did not want him to have unsupervised visits with the child, which caused the father to throw water and a full car ashtray at the mother as he drove. Regarding other instances, the mother testified that in total, the father struck her on approximately seven occasions, including punching her in the mouth three times and, as previously noted, kicking her while she was pregnant with the child. Further, subpoenaed records from an investigation by Child Protective Services were entered into evidence, which revealed that the father was alleged to have broken the arms of his two stepchildren, resulting in him being indicated for inadequate guardianship and excessive corporal punishment and being criminally charged.
As for the parties' respective home environments, the mother lives with her mother, two sisters and the subject child. The mother does not work due to caring for the child, but receives supplemental security income benefits and support from her family. The father lives alone and is behind on his rent but receives support from his family and approximately $1,500 per week doing food deliveries.
The father raised various concerns regarding the mother's ability to raise the child, including alleged developmental delays for the child and the mother's use of marihuana. The father also maintained that should Family Court grant his custody petition, he would allow the mother to have unfettered visitation. In the event that the mother were to receive sole custody, however, the father testified repeatedly that he would not engage in supervised visitation with the child because he believed it to be unnecessary. In that vein, the father emphasized that he previously had the child stay with him unsupervised for many overnight visits, which was contradicted by the mother's testimony that the father never had the child alone.
Deferring to Family Court's determination that the mother was generally more credible than the father, we find a sound and substantial basis in the record to support the court's conclusion that it is in the child's best interests to award the mother sole legal and physical custody, with supervised parenting time for the father (see Matter of Stephanie R. v Walter Q., 203 AD3d 1440, 1443 [3d Dept 2022]; Matter of Amanda YY v Faisal ZZ., 198 AD3d 1125, 1126-1127 [3d Dept 2021], lv denied 38 NY3d 908 [2022]).FN2 With respect to legal custody, the record reflects the parties' inability to communicate effectively concerning the child, rendering joint legal custody inappropriate (see Matter of Sheena PP. v Edward QQ., 238 AD3d 1417, 1418 [3d Dept 2025]). Relative to physical custody, the court properly awarded it to the mother in view of her role as, essentially, the child's sole caregiver and her clear willingness to support a relationship between the child and the father, as contrasted with the father's virtual absence [*5]from the child's life and hostility toward the mother, as well as his acts of domestic violence against her (see Matter of Mackenzie OO. v Ian NN., 242 AD3d 1345, 1350 [3d Dept 2025]; Matter of Samantha E. v Nicholas F., 233 AD3d 1295, 1297-1298 [3d Dept 2024]; Matter of Aden HH. v Charish GG., 226 AD3d 1109, 1112-1113 [3d Dept 2024]; Matter of Warda NN. v Muhammad OO., 217 AD3d 1086, 1089-1090 [3d Dept 2023]). Finally, we take no issue with Family Court's directive that the father's parenting time be supervised, given that the father and the child have not had any contact for some time, the father previously threatened to abscond with the child and he acted violently toward the mother in the child's presence (see Matter of Kelly SS. v Justin TT., 244 AD3d 1345, 1347-1348 [3d Dept 2025]; Matter of Mackenzie OO. v Ian NN., 242 AD3d at 1350; Matter of Carin R. v Seth R., 196 AD3d 776, 778 [3d Dept 2021]). To the extent not expressly addressed herein, the father's remaining contentions have been found to be lacking in merit.
Garry, P.J., Reynolds Fitzgerald, Powers and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1
The father's petition did not explicitly allege that the mother committed the family offenses of harassment in the first or second degrees. However, upon our independent review of the petition, we agree with Family Court that the father's allegations regarding the mother's purported threats against him attempted to establish the family offenses sounding in harassment (see generally Matter of Oksoon K. v Young K., 115 AD3d 486, 487 [1st Dept 2014], lv denied 24 NY3d 902 [2014]), a point that is undisputed by the father on appeal.

Footnote 2
In so concluding, we note that the attorney for the child supports this determination.